Brinkerhoff, J.
The plaintiff in error, Porter, who was defendant before the justice of the peace and in the court of common pleas, was township treasurer of Perry township, in Pickaway county, from April, 1861, to April, 1862, when his office expired, and another person became treasurer.
While Porter was such treasurer, one E. E. Clark, from September 3, 1861, to November 15, 1861, was a teacher of the common school in subdistrict No. 3, in said township; and while he was-so teaching, and before he concluded his engagement, prior to the-drawing of the order for Clark’s payment for teaching, Porter advanced to Clark $60, and took up a promissory note of $25= which Clark owed one J. H. Porter, a son of plaintiff in error, with the agreement between Porter and Clark, that Porter should retain the *$85 out of such order to Clark, when drawn, if the amount of such order should be sufficient for that purpose, and if not, then that he should retain the amount of said order.
On November 18, 1861, the clerk of the township, upon the certificate of the local directors, drew and delivered to Clark, for his services as such teacher, an order upon the township treasurer-(then Porter) for $80.85, which order was made payable to E. E. Clark or bearer.
When the order was drawn and delivered to Clark, and continually thereafter while Porter remained such treasurer, there were-funds in his hands sufficient to pay it, applicable to its payment.
Clark never presented the order, but assigned it to one Probst, who presented it for payment, as the owner, to Porter, as such township treasurer. He refused to pay it, alleging the agreement made between him and Clark before the order was drawn. Probst and Clark then rescinded their contract by which the order had been assigned to Probst, and Clark received the order back. The order was never otherwise presented to the treasurer of the township.
*546 About January 1, 1862, the defendant in error, Dunlap, who was plaintiff before the justice and in the court of-common pleas, being ignorant of what had occurred in relation to the order and between Clark and Porter, for a valuable consideration, purchased and received from Clark this order, Clark indorsing it to him; Clark ■stating at the time to Dunlap that he had been with the order to Porter’s, the treasurer’s, house, where the township treasury was kept, and that he was absent; that he, Clark, had entered the army and was about to leave with his regiment, without being able to take time to go again to said treasury and draw the money coming to him on the order, and requesting Dunlap to purchase it, which, in good faith and with no other knowledge than what the paper itself furnished, and what Clark stated as aforesaid, Dunlap did.
Dunlap never presented the order to the township treasurer for payment during his term. But in a few days, or weeks, after Dunlap became the holder of the order, Porter was aware that he was its owner and holder, as Dunlap had *gone to Porter’s house to present it and demand its payment. Porter was absent, and Dunlap notified the family of the object of his visit, of which Porter was duly advised. Afterward, just prior to the close of his term of office, Porter, as is alleged in the petition, to deprive Dunlap of his right to the money due to him on the order, and to collect his private claim on Clark, «wrongfully, about April, 1862, procured the township clerk to draw another order, payable to said Clark for his wages as teacher, and deliver the same to him, Porter ; which was done without the knowledge or consent of Dunlap or Clark, and in the absence of both of them. Porter then took the order thus obtained, and at the expiration of his term of office, settled with the county auditor and the township his accounts as treasurer, the second order being allowed to him in the settlement for the amount of money called for therein, to wit, $80.85, which he thus procured at the expiration of his term of office, and has ever since retained individually. Everything else pertaining to his treasurership he delivered to his successor.
About September 1,1862, Dunlap demanded this money of Porter; Porter refused to pay him. Dunlap sued Porter before a justice of the peace on the claim. Judgment was rendered against Dunlap, and he appealed to the court of common pleas.
This state of facts appearing in the pleadings, the court of common pleas, on demurrer, gave judgment in favor of Porter, defend *547 ant below, and this judgment was, on error, reversed by the district court; and to reverse the judgment of reversal, this petition in error is prosecuted here.
¥e are of opinion that the court of common pleas was right, and that the district court was wrong.
I have borrowed the foregoing statement of facts from the brief of counsel for the defendant in error, in order that it might not be wanting in the qualities of strength and fullness. But in order to a clear understanding of the case as it is between these parties, it will be well, in the first place, to weed out from the statement such facts and circumstances as occurred after the rights of these parties, as against each other, had been fixed, and which have really nothing to do *with the case, because they in no way modify the relations or affect the rights of the parties; and among these irrelevant circumstances are the facts that the defendant below, Porter, ■obtained a second order from the township clerk, and that by the possession of it as a voucher, he was able to effect his official settlement as township treasurer with the township and with the county auditor.
For if Dunlap had any legal claim against Porter before the second order was obtained, he has it yet; and if he had none then, he has none now. It was nothing to Dunlap if Porter never effected a settlement of his official accounts; and if he did effect such settlement, it was no concern of Dunlap by what means it was accomplished.
Thus divested of extraneous matter, the case seems to me to be a very simple one. One Clark was engaged in teaching school and earning wages which, when earned, would be payable out of the township school fund. He sells this accruing claim against the school fund to Porter, and receives his pay for it in advance, in full and without discount; and as the amount, when earned, must pass through Porter’s hands as treasurer, he agrees that Porter shall retain it as his own. As between them, this was a good transfer, in equity, of Clark’s accruing claim to Porter (2 Story’s Eq., sec. 1040); and thenceforth Clark would be estopped by his own agreement, fully executed on the part of Porter, to claim anything from the school fund as against Porter, until the latter had been reimbursed. The money could reach the hands of Clark only through the hands of Porter. This was Porter’s security. On it he relied, and had a right to rely.
*548 Afterward, Clark’s engagement'as a teacher having expired, and his-wages having been earned, he procures from the township clerk the proper order on Porter, the township treasurer, for the amount; and then fraudulently transfers the order, for a valuable consideration, to Dunlap, the plaintiff below, who is ignorant of Porter’sequity. But this assignment of the order by Clark to Dunlap, like his previous transfer of the same claim to Porter, was only an equitable assignment. The order was not negotiable paper, and was invested by law with none of the attributes or immunities of ^negotiable paper. It was simply an evidence of indebtedness. The assignee of it took it subject to all the infirmities and equities imposed upon it by his assignor, and which would attach to it in the hands of his assignor. The assignee stood in the shoe» of the assignor, and could have no better title than he; and what would estop the one to insist upon its payment against the claim of Porter, would equally estop the other. And that Clark, if he had retained the order, would be estopped by his contract with Porter to claim anything as against him, is, it seems to me, too obvious to admit of illustration or argument. The plaintiff below, then, is not entitled to recover—
1. Because he is estopped by the agreement of Clark, in whose shoes he stands.
2. Because Porter’s equity is prior in time, and therefore better-in right; and;
3. Because Porter is in possession of the fund in controversy; and even if the rights of the parties were equal, the claim of the party in actual possession would prevail. In cequali jure melior est conditio possidentis.
The judgment of the district court will be reversed, and that off the common pleas affirmed.
Day, C. J., and White, Welch, and Scott, JJ¡, concurred.